**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| BRIAN C. KERZETSKI,<br>Plaintiff,<br>v.<br>JEREMY BEAN, *et al.*,<br>Defendants. | Case No.: 2:25-cv-00234-RFB-NJK<br>**AMENDED SCREENING ORDER ON SECOND AMENDED COMPLAINT**<br>***amended to include amount due for the filing fee on page 12** |

*Pro se* Plaintiff Brian Kerzetski, who is currently incarcerated in the custody of the Nevada Department of Corrections at High Desert State Prison ("HDSP"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983. In screening Mr. Kerzetski's original complaint (ECF No. 12), this Court allowed his Eighth Amendment conditions claim about inadequate exercise to proceed, and dismissed his Eighth Amendment claim about inadequate showers, as well as his Fourteenth Amendment Equal Protection Clause claim, and Nevada Constitution Article 1, § 1 claim, with leave to amend by September 30, 2025. See ECF No. 11. Mr. Kerzetski timely filed his first amended complaint together with a motion for leave to file it and premature proposed summonses. See ECF Nos. 17, 17-1, 17-2. He later moved for leave to file a second amended complaint ("SAC"), arguing that he had exhausted his administrative remedies for some claims, added defendants, and separated one claim into several. See ECF No. 19. Kerzetski has applied to proceed *in forma pauperis* ("IFP Application"). ECF No. 1. This action was included in the Court's Inmate Early Mediation Program, but the parties did not settle. See ECF Nos. 20, 21.

The Court denies Kerzetski's motion leave to file a first amended complaint as moot, grants his motion for leave to file a second amended complaint, screens that amended pleading under 28 U.S.C. § 1915A, grants his IFP Application, and directs that service upon the defendants be

perfected within 90 days from this order.

## I. FACTUAL ALLEGATIONS

Mr. Kerzetski has been housed at HDSP since February 8, 2022, in a double-occupancy cell that measures about 86 square feet and is too small to accommodate in-cell exercise. See ECF No. 19-1 at 5. Mr. Kerzetski's cellmate is almost always present. See id. HDSP Warden Jeremy Bean and Associate Warden Julie Williams were responsible for providing adequate outdoor exercise to HDSP's prisoners and approved all exercise schedules. See id. at 7. Beginning in September 2022, Warden Brian Williams ("B. Williams") closed access to the recreation yards for all prisoners. See id. Closing the exercise yards forced those incarcerated at HDSP to exercise—*e.g.*, run and walk—on rocky, rough, and uneven surfaces with loose rocks and gravel. See id. at 11. HDSP's recreation areas further lack shelter from the elements, toilets, and drinkable water. See id. at 9.

Beginning on December 10, 2022, Mr. Kerzetski filed grievances describing risks of harm, like dehydration, from the exercise-yard conditions, but Associate Warden James Scally, John Doe 3, and Wardens B. Williams and Jeremy Bean did nothing to correct them. See id. at 11–12. Mr. Kerzetski slipped on loose gravel while running in 2023, fell, and suffered deep cuts and scrapes on his hands that required medical attention. See id. He also experienced anxiety, embarrassment, dehydration, and sunburn due to the exercise-yard conditions. See id. at 9–10).

From December 8, 2022, to January 31, 2024, Mr. Kerzetski was allowed to use the recreation yard for a maximum of 1 hour daily. See id. at 5. But access was "sporadic," due in part to "frequent" lockdowns. Id. Mr. Kerzetski was denied outdoor exercise for an "extended period of time." Id. at 5–6. Bean took over from B. Williams as HDSP's warden during this time. See id. at 4. B. Williams became Deputy Director for the Nevada Department of Corrections ("NDOC") during this time. See id.

From February 1 to March 6, 2024, Mr. Kerzetski accessed the exercise yard for only 6 days, 1 hour maximum each day. See id. at 6. From May 7 to July 29, 2024, Mr. Kerzetski's access to the yard was again "sporadic" due to "frequent" and "extended" lockdowns. Id. Mr. Kerzetski

did not have any access to the yard from July 30, 2024, to January 19, 2025. See id. From January 20 to March 22, 2025, Mr. Kerzetski was scheduled for outdoor exercise three days each week for two hours each day, but he did not receive that amount of outdoor exercise due to "frequent" and "extended" lockdowns. Id. From March 22 to December 2025, Kerzetski was scheduled for outdoor exercise 1 hour daily, but his actual yard access was "sporadic" due to "frequent" and "extended" lockdowns. Id.

For ten days in 2024, Mr. Kerzetski's exercise time was scheduled to happen during his chapel time, forcing him to choose between exercising and foregoing religious services, which he believes are necessary to practice his Catholic faith. See id. at 13. Mr. Kerzetski always sacrificed his exercise time instead of missing religious services. See id. For 22 days in 2025, Mr. Kerzetski's exercise time was scheduled to happen during his shower time, forcing him to choose between exercising and forgoing basic hygiene and sanitation matters. See id.

Mr. Kerzetski filed an emergency grievance on May 10, 2024, complaining that the lack of outdoor exercise was causing him physical harm. See id. at 6. John Doe 1 denied the grievance, so Kerzetski appealed to Bean. See id. Associate Warden William Kuloloia reviewed the grievance but took no action. See id. at 6–7. So Kerzetski appealed to B. Williams, but he took no action. See id. at 7. Kerzetski experienced weakness, shortness of breath, unhealthy weight gain, atrophied muscles, lethargy, and mental and emotional distress due to inadequate outdoor exercise. See id. at 8.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two

essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious[,]" "fails to state a claim on which relief may be granted[,]" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a complaint for failure to state a claim upon which relief can be granted, and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. See Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. See id.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

All or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). See Neitzke v. Williams, 490 U.S. 319, 327–28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

## III. DISCUSSION

Based on the allegations summarized above, Mr. Kerzetski sues Jeremy Bean, Julie Williams, William Kuloloia, D. Kelley, James Dzurenda, Brian Williams, Joseph Lombardo, Francisco Aguilar, Aaron Ford, James Scally, and John Does 1 to 3. See ECF No. 19-1 at 1–4. He brings eight claims and seeks declaratory, monetary, and injunctive relief. See id. at 5–17. The Court liberally construes the SAC as bringing claims under the First Amendment and Nevada Constitution Article 1, §§ 4 and 6 about retaliation (the "Retaliation Claims"); the Eighth Amendment and Nevada Constitution Article 1, § 6 about inadequate exercise (the "Inadequate Exercise Claims") and unsafe exercise conditions (the "Unsafe Exercise Conditions Claims"); and the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and Nevada Constitution Article 1, § 4 about religious exercise (the "Religious Exercise Claims").[1] The Court addresses these theories and any issues below.

### A. The Retaliation Claims are dismissed without leave to amend.

People that are incarcerated have a First Amendment right to file prison grievances and to

[1] At the screening stage, the Court reserves ruling on whether the Court has jurisdiction over Petitioner's claims arising under the Nevada constitution. See Cardenas-Ornelas v. Johnson, No. 24-6755, 2026 WL 237695, at *2 (9th Cir. Jan. 29, 2026).

pursue civil rights litigation in the courts. See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567–68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Id. at 568–69. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is more than minimal. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

These claims exceeds the scope of amendment that the Court granted to Mr. Kerzetski. See ECF No. 11 at 11–12. The Court granted Mr. Kerzetski leave to file an amended complaint to attempt to replead his claims under the Eighth Amendment about unconstitutional shower conditions, under the Fourteenth Amendment about denial of equal protection of the laws, and under Nevada Constitution Article 1, § 1 about inadequate outdoor exercise. See id. The Court expressly directed that "Kerzetski does not have leave to add new claims." Id. at 11.

These claims are also deficiently pled. Mr. Kerzetski does not provide factual allegations supporting his claim that prison officials made him choose between exercise, attending religious services, or using the shower, just because he engaged in protected conduct like filing grievances or lawsuits about prison conditions or misconduct. Moreover, neither provision of the Nevada Constitution that Mr. Kerzetski invokes supports a claim about retaliation. Nevada Constitution Article 1, § 6 provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishments be inflicted, nor shall witnesses be unreasonably detained."

While Article 1, § 4 provides,

> The free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State, and no person shall be rendered incompetent to be a witness on account of his opinions on matters of his religious belief, but the liberty of [conscience] hereby secured, shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace, or safety of this State.

The Retaliation Claims are therefore dismissed without prejudice and without leave to amend.

**B. The Inadequate Exercise and Unsafe Exercise Conditions Claims will proceed.**

The treatment and conditions that individuals receive in prison are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, prison officials have a "duty to ensure" that incarcerated people are provided "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

A plaintiff challenging conditions of confinement must make two showings. See id. First, "the deprivation alleged must be, objectively, sufficiently serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation modified). When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Wright v. Rushen, 642 F.2d 1129, 1133 (9th Cir. 1981). Second, as to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. Id. When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

Article 1, § 6 of the Nevada Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishments be inflicted, nor shall witnesses be unreasonably detained." Courts apply the same legal standards to the cruel and

unusual punishment provision included in Article 1, § 6 of the Nevada Constitution as they do to the cruel and unusual punishment provision of the Eighth Amendment of the United States Constitution. See Naovarath v. State, 779 P.2d 944, 949 n.6 (Nev. 1989).

***i. Adequate exercise***

"[E]xercise is one of the basic human necessities protected by the Eighth Amendment." Norbert v. City and Cnty. of San Francisco, 10 F.4th 918, 928–29 (9th Cir. 2021) (citation modified) (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); and LeMarie v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993)). But the Ninth Circuit has not gone so far as to conclude that "all deprivations of outdoor exercise are *per se* unconstitutional." Id. at 929. Rather, "the Constitution requires jail officials to provide outdoor recreation opportunities, or otherwise meaningful recreation.'" Id. (citation modified) (quoting Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018)). The Ninth Circuit has recognized that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Keenan v. Hall, 83 F.3d 1083,1089 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) (order). But "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." May, 109 F.3d at 565.

Mr. Kerzetski states colorable claims about inadequate exercise. Mr. Kerzetski cannot exercise in his cell. HDSP has outdoor areas set aside for prisoners to exercise, but since September 2022, Mr. Kerzetski has not had regular and consistent outdoor exercise. Over the years, he's been scheduled for outdoor exercise for one hour daily or two hours three days a week. But he's rarely received the scheduled amount because the prison is frequently locked down for long periods of time.

Attached to the SAC is a handwritten log purporting that, on five occasions, from March 20, 2024, to December 2, 2025, Mr. Kerzetski has been without outdoor exercise for 14 or more days and the longest period lasted 174 days. See ECF No. 19-1 at 20–21. Mr. Kerzetski also alleges that he was denied outdoor exercise from September to December 2022. He's experienced a host of negative physical and mental symptoms from inadequate outdoor exercise at HDSP. Based on the allegations, Jeremy Bean, Julie Williams, William Kuloloia, James Dzurenda, and Brian

Williams are responsible for the exercise schedule and lockdowns at HDSP or they knew from Mr. Kerzetski's grievances about the harm he was suffering and failed to act within their power to correct the condition. As to the rest of the Defendants, the factual allegations are too slim to plausibly connect any other Defendant to this alleged violation. The Inadequate Exercise Claims under the Eighth Amendment and Nevada Constitution Article 1, § 6 will therefore proceed against Bean, J. Williams, Kuloloia, Dzurenda, and B. Williams.

***ii. Unsafe outdoor exercise conditions***

The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of incarcerated people. See Farmer, 511 U.S. at 832. To establish an Eighth Amendment violation, a plaintiff must show that prison officials were deliberately indifferent to serious threats to his safety. See id. at 834. The plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all incarcerated people are exposed. See id. at 843.

Mr. Kerzetski states colorable claims about unsafe outdoor exercise conditions. Mr. Kerzetski alleges that outdoor exercise areas at HDSP lack shelter from the elements, toilets, and drinkable water. After Brian Williams closed the dedicated exercise yard, prisoners were forced to exercise on uneven and rough surfaces with loose rocks and gravel. Mr. Kerzetski tripped on gravel while running one day and suffered deep lacerations that required medical attention. He has also been sunburned, suffered dehydration, and experienced shame and anxiety due to the prison's outdoor exercise conditions. Mr. Kerzetski's factual allegations are sufficient to show that Jeremy Bean, Brian Williams, James Scally, and James Dzurenda are responsible for the outdoor exercise conditions at HDSP, or knew about the harm Mr. Kerzetski was suffering from his grievances, but failed to act within their power to correct them. As to the remaining Defendants, the factual allegations are too slim to plausibly connect any other Defendant to this alleged violation. The Unsafe Exercise Conditions Claims under the Eighth Amendment and Nevada Constitution Article

1, § 6 will therefore proceed against Bean, B. Williams, Scally, and Dzurenda.

**C. The Religious Exercise Claims will proceed.**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. Amend. I. The First Amendment, "including its directive that no law shall prohibit the free exercise of religion" extends beyond prison walls. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The Supreme Court has also recognized that an an incarcerated person's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion. A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jones v. Williams, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citation modified). "Even if such a belief is substantially burdened, the regulation is "valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Claims brought under RLUIPA are like free-exercise claims, although RLUIPA proceeds under a slightly different framework. RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the government demonstrates that imposition of the burden on that person" "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). "Under RLUIPA, the plaintiff bears the initial burden of demonstrating that an institution's policy constitutes a substantial burden on his exercise of religion." Jones v. Slade, 23 F.4th 1124, 1140 (9th Cir. 2022) (citing 42 U.S.C. § 2000cc-2(b)). The Ninth Circuit has recognized that a prison policy or practice may impose a substantial burden on religious exercise "indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from

doing . . . ." Id. (citation modified) (collecting cases).

Nevada Constitution Article 1, § 4 provides that "[t]he free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State." This Court assumes without deciding that the Nevada Supreme Court would find this provision of Nevada's Constitution to be coextensive with the federal First Amendment's Free Exercise Clause. Cf. S.O.C., Inc. v. Mirage Casino-Hotel, 23 P.3d 243, 251 & n.49 (Nev. 2001) (holding that Nevada Constitution Article 1, § 9 is coextensive to, but not greater than, that of the First Amendment to the United States Constitution").

Mr. Kerzetski arguably states colorable religious exercise claims. Mr. Kerzetski alleges that he is a member of the Catholic Church and sincerely believes that he must attend Mass on a weekly basis. He attends Mass in the prison's chapel. But for 10 days in 2024, Kerzetski's exercise time was scheduled to happen during his chapel time, forcing him to choose between exercising and foregoing religious services. Mr. Kerzetski always sacrificed his exercise time instead of missing religious services. Mr. Kerzetski alleges that Bean was responsible for the exercise schedule and knew that it overlapped with his chapel time but did not correct this condition. As to the remaining Defendants, the factual allegations are too slim to plausibly connect any other Defendant to this alleged violation. The Religious Exercise Claims under the First Amendment's Free Exercise Clause, RLUIPA, and Nevada Constitution Article 1, § 4 will therefore proceed against Bean.

## IV. CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that the IFP Application (ECF No. 1) is **GRANTED**. Kerzetski will not be required to pay an initial installment of the filing fee. He is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor. In the event this action is later dismissed, the full filing fee must still be paid under 28 U.S.C. § 1915(b)(2).

**IT IS FURTHER ORDERED** that the Nevada Department of Corrections must forward payments from the account of **Brian C. Kerzetski, #1253192**, to the Clerk of the United States

District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action.

**IT IS FURTHER ORDERED** that the motion for leave to file a first amended complaint, ECF No. 17, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion for leave to file a second amended complaint, ECF No. 19, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Retaliation Claims under the First Amendment and Nevada Constitution Article 1, §§ 4 and 6 are **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** that the Inadequate Exercise Claims under the Eighth Amendment and Nevada Constitution Article 1, § 6 will proceed against Jeremy Bean, Julie Williams, William Kuloloia, James Dzurenda, and Brian Williams.

**IT IS FURTHER ORDERED** that the Unsafe Exercise Conditions Claims under the Eighth Amendment and Nevada Constitution Article 1, § 6 will proceed against Jeremy Bean, Brian Williams, James Scally, and James Dzurenda.

**IT IS FURTHER ORDERED** that the Religious Exercise Claims under the First Amendment's Free Exercise Clause, RLUIPA, and Nevada Constitution Article 1, § 4 will proceed against Jeremy Bean.

**IT IS FURTHER ORDERED** that Defendants D. Kelley, Joseph Lombardo, Francisco Aguilar, and Aaron Ford are **DISMISSED WITHOUT PREJUDICE** from this action.

**IT IS FURTHER ORDERED** that because this action was included in the Court's Inmate Early Mediation Program, ECF Nos. 20, 21, but the parties did not reach a settlement, this action will proceed onto the normal litigation track.[2]

**IT IS FURTHER ORDERED** that service must be perfected within 90 days from the date of this order under Federal Rule of Civil Procedure 4(m).

**IT IS FURTHER ORDERED** that within 21 days of the date of entry of this order, the Attorney General's Office must file a notice advising the Court and Plaintiff Kerzetski of (a) the

[2] The parties are free to privately discuss settlement if they choose to do so.

names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. As to any of the named defendants for whom the Attorney General's Office cannot accept service, the Office must file, under seal, but will not serve the Plaintiff the last known address(es) of those defendant(s) for whom it has such information. If the last known address of the defendant(s) is a post office box, the Attorney General's Office must attempt to obtain and provide the last known physical address(es).

**IT IS FURTHER ORDERED** that if service cannot be accepted for any of the named defendant(s), Plaintiff Kerzetski must file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s). For the defendant(s) as to which the Attorney General has not provided last-known-address information, Kerzetski must provide the full name and address for the defendant(s).

**IT IS FURTHER ORDERED** that if the Attorney General accepts service of process for any named defendant(s), such defendant(s) must file and serve an answer or other response to the second amended complaint within 60 days from the date of this order.

**IT IS FURTHER ORDERED** that Planitiff Kerzetski must serve upon defendant(s) or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion, or other document that he submits for the Court's consideration. If Plaintiff Kerzetski electronically files a document with the Court's electronic-filing system, no certificate of service is required. Fed. R. Civ. P. 5(d)(1)(B); Local Rule IC 4-1(b); Local Rule 5-1. But if Plaintiff Kerzetski mails the document to the Court, he must include with it a certificate stating the date that a true and correct copy of the document was mailed to the defendant(s) or their attorney(s). If counsel has entered a notice of appearance, Plaintiff Kerzetski must direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein. The Court may disregard any document received by a district judge or magistrate judge that has not been filed with the Clerk or fails to include a certificate showing proper service when required.

///

///

The Clerk of Court is kindly instructed to:

1. **FILE** the second amended complaint (ECF No. 19-1) and **SEND** Plaintiff Kerzetski a courtesy copy of that amended pleading;
2. **SEND** a copy of this Order to (a) the Finance Division of the Clerk's Office and (b) to the attention of Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov;
3. **ELECTRONICALLY SERVE** a copy of this Order and a copy of the second amended complaint on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the docket sheet (this does not indicate acceptance of service).

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**